UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Melissa Gibson, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>- against -<br><br>Eagle Family Foods Group LLC,<br><br>Defendant | 1:22-cv-02147<br><br>Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Eagle Family Foods Group LLC ("Defendant") manufactures, labels, markets, and sells popcorn under the "Popcorn Indiana" brand ("Product").

I. POPCORN'S CONNECTION TO INDIANA

2. Indiana ranks second in the nation in popcorn production only to Nebraska.

3. Popcorn is the official snack of Indiana, as this industry began here.

4. This is largely due to the efforts of Orville Redenbacher, in addition to other significant companies such as Cousin Willie's and Pop Weaver.

5. Indiana's connection with popcorn extends across the entire value chain, from the growing of the crops to the popping of the kernels.

6. Due to this long history and roots in Indiana, popcorn made in Indiana from start to finish is generally believed to be of higher quality than popcorn made in other locations.

7. Numerous companies take advantage of Indiana's expertise in all areas of popcorn production, as there are believed to be more popcorn production facilities here than any other state.

8. This industry supports thousands of good paying jobs, supporting local communities.

**II. CONSUMER DEMAND FOR AUTHENTICITY**

9. Today's consumers are faced with increasing commercialization of products and seek brands that are genuine – whisky from Scotland, sake from Japan, and tomatoes from Italy.

10. For many consumers, authenticity has overtaken quality as the prevailing purchasing criterion.

11. Consumers typically lack expertise in judging food quality and are not in the habit of spending time to assess objective quality, nor would they know what to look for.

12. Brand names serve as a signal of quality in where consumers have imperfect information about a product's quality.

13. Consumers will pay a price premium for what they perceive to be authentic products linked to a specific place, such as popcorn grown and popped in Indiana.

14. This is because appealing to tradition reflects the need to have reference points, trust and stability.

15. The reasons include (1) an expectation that a product made in the location where it was first developed will be of higher quality and value due to expertise and local knowledge developed in that location and (2) a desire to support and maintain local traditions and cultures at the expense of commoditized products.

**III. REPRESENTATIONS PRODUCT IS MADE IN INDIANA**

16. Consumers expect Popcorn Indiana to be made in Indiana, from start to finish and contain the unique characteristics of popcorn made there.

17. Popcorn Indiana refers to the town with this name in Perry County, Indiana, known for its history of popcorn production.

18. Defendant's label includes the statement "Popcorn Indiana" with other labeling

elements, giving consumers the impression it is made in Indiana, from the harvesting of the corn to the popping of the kernels.

  

19. The Product's earlier labels, which stated, "Welcome to Popcorn Indiana. Population 42," were effective in causing consumers to believe the popcorn was not only grown but also popped in Indiana.

20. The result was that when the "Welcome to" label was replaced, the brand no longer needed to explicitly identify Popcorn as a place in Indiana.

21. The more recent labels include elements of Americana, such as red and white colors, an image of a star and stripes inside various letters in the brand name, and an ear of corn.

22. Many consumers know that state names are preceded by names of cities, and may surmise that "Popcorn" in "Popcorn Indiana" refers to a city where the company is from and the Product is made, from start to finish.

23. Those consumers who do not know that "Popcorn" refers to a city believe "Popcorn Indiana" is the name of the brand because it is from Indiana, where the Product is made, which is known for its popcorn.

24. However, Popcorn Indiana has no real connection to Popcorn, Indiana or Indiana beyond the raw materials used, which can be said of a significant number of popcorn brands.

25. Popcorn Indiana is neither from nor made in Indiana.

26. That the Product is neither from nor made in Indiana is not disclosed on the front or back of the packaging.

27. This information is only disclosed on Defendant's website, which states the Product is made in Waukegan, Illinois.

> pride in making delicious popcorn. With quality and consistency top of mind, we moved from 3 (co-manufactured) popcorn facilities into 1 single facility owned and operated by us, and located in the Midwest (specifically, Waukegan, IL).

With quality and consistency top of mind, we moved from 3 (co-manufactured) popcorn facilities into 1 single facility owned and operated by us, and located in the Midwest (specifically, ==Waukegan, IL==).

28. Popcorn Indiana is deceptively misdescriptive as a name.

29. Popcorn Indiana has not been so long and exclusively used by this brand that it is generally understood by consumer to mean the product of a particular manufacturer or distributor, especially because its earlier labels had more explicit references to the town of Popcorn, Indiana.

30. Popcorn Indiana is not so arbitrary or fanciful so that it is not generally understood by consumers to suggest geographic origin.

31. Popcorn Indiana is not a name whose market significance is generally understood by the consumer to connote a particular class, kind, type, or style of popcorn rather than to indicate

geographical origin, because a good portion of the world's popcorn is grown in Indiana and processed into popped corn there.

32. If Popcorn Indiana only connoted a particular class, kind, type, or style of popcorn, it would have minimal to no significance, because Indiana is the birthplace of popcorn.

33. The Product contains other false and misleading representations and omissions.

34. The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

35. As a result of the false and misleading representations and omissions, the Product is sold at a premium price, approximately no less than $2.99 for 3 oz, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

## Jurisdiction and Venue

36. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

37. The aggregate amount in controversy exceeds $5 million, including any statutory and punitive damages, exclusive of interest and costs.

38. Plaintiff is a citizen of Indiana.

39. Defendant's sole member is citizen of Delaware and New York.

40. The class of persons Plaintiff seeks to represent includes persons who are citizens of different states from which Defendant's member is a citizen.

41. The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold with the representations described in thousands of locations, including grocery stores, big box stores, warehouse club stores, drug stores, convenience stores, and online

across the States covered by Plaintiff's proposed classes.

42. Venue is in this District with assignment to the Indianapolis Division because Plaintiff resides in Johnson County and a substantial part of the events and omissions giving rise to these claims occurred in here, including Plaintiff's purchase of the Product, relying on the representations and awareness the labeling was false and misleading.

## Parties

43. Plaintiff Melissa Gibson is a citizen of Greenwood, Johnson County, Indiana.

44. Defendant Eagle Family Foods Group LLC, is a Delaware limited liability company with a principal place of business in Cleveland, Ohio, Cuyahoga County.

45. Defendant's managing member is Kelso & Companies, Inc., a Delaware corporation with a principal place of business in New York.

46. Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at locations including Walmart, 1133 N Emerson Ave Rd, Greenwood, IN 46143, between August and October 2022.

47. Plaintiff bought the Product because she saw and relied on the label which stated, "Popcorn Indiana" and she believed this referred to where the company was from and where it was made, including the growing of the popcorn and popping it.

48. Plaintiff was unaware the Product was not connected to Indiana beyond the popcorn grown for use in the Product.

49. Plaintiff relied on the words, terms coloring, descriptions, layout, placement, packaging, tags, and/or images on the Product, on the labeling, statements, omissions, claims, and instructions, made by Defendant or at its directions, in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

50. Plaintiff bought the Product at or exceeding the above-referenced price.

51. Plaintiff paid more for the Product than she would have had she known the representations were false and misleading, as she would not have bought it or paid less.

52. Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes.

53. Plaintiff intends to, seeks to, and will purchase the Product again when she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition.

54. Plaintiff is unable to rely on the labeling of not only this Product, but other similar products which reference a geographical location because she is unsure of whether their representations are truthful.

## Class Allegations

55. Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Indiana Class:** All persons in the State of Indiana who purchased the Product during the statutes of limitations for each cause of action alleged.
>
> **Consumer Fraud Multi-State Class**: All persons in the States of North Dakota, North Carolina, Utah, Idaho, Alaska, West Virginia, and Montana, who purchased the Product during the statutes of limitations for each cause of action alleged.

56. Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

57. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair, misleading, and deceptive representations, omissions, and actions.

58. Plaintiff is an adequate representative because her interests do not conflict with other

members.

59. No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

60. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

61. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

62. Plaintiff seeks class-wide injunctive relief because the practices continue.

Indiana Deceptive Consumer Sales Act ("DCSA"),
I.C. §§ 24-5-0.5 *et seq.*

63. Plaintiff incorporates by reference all preceding paragraphs.

64. Plaintiff relied on the representations and omissions to believe the company was from Indiana, the popcorn was grown in Indiana, and was processed into its final form in Indiana.

65. Plaintiff and class members were damaged by paying more for the Product than they would have if they knew the present facts.

Violation of State Consumer Fraud Acts
(Consumer Fraud Multi-State Class)

66. The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the consumer protection statute invoked by Plaintiff and prohibit the use of unfair or deceptive practices.

67. The members of the Consumer Fraud Multi-State Class were harmed in the same way as Plaintiff, and may assert their consumer protection claims under the Consumer Fraud Acts of their States and/or the consumer protection statute invoked by Plaintiff.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.</u>

68. The Product was manufactured, identified, marketed, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that the company was from Indiana, the popcorn was grown in Indiana, and was processed into its final form in Indiana.

69. Defendant directly marketed the Product to Plaintiff through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, product descriptions distributed to resellers, and targeted digital advertising.

70. Defendant knew the product attributes that potential customers like Plaintiff were seeking, such as foods connected to a place known for such foods, and developed its marketing and labeling to directly meet those needs and desires.

71. Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the company was from Indiana, the popcorn was grown in Indiana, and was processed into its final form in Indiana.

72. Defendant described the Product so Plaintiff believed the company was from Indiana, the popcorn was grown in Indiana, and was processed into its final form in Indiana, which became part of the basis of the bargain that it would conform to its affirmations and promises.

73. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

74. This duty is based on Defendant's outsized role in the market for this type of product, custodian of the Popcorn Indiana brand.

75. Plaintiff recently became aware of Defendant's breach of the Product's warranties.

76. Plaintiff provides or will provide notice to Defendant, its agents, representatives, retailers, and their employees that it breached the Product's express and implied warranties.

77. Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

78. The Product did not conform to its affirmations of fact and promises.

79. The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the promises or affirmations of fact made on the packaging, container, or label, because it was marketed as if the company was from Indiana, the popcorn was grown in Indiana, and was processed into its final form in Indiana.

80. The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because she expected the company was from Indiana, the popcorn was grown in Indiana, and was processed into its final form in Indiana, and relied on Defendant's skill and judgment to select or furnish such a suitable product.

Negligent Misrepresentation

81. Defendant had a duty to truthfully represent the Product, which it breached.

82. This duty was non-delegable, based on Defendant's position, holding itself out as having special knowledge and experience in this area, a trusted brand known for its popcorn.

83. The representations and omissions went beyond the specific representations on the packaging, and incorporated the extra-labeling promises and commitments to quality that Defendant has been known for.

84. These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

85. The representations took advantage of consumers' cognitive shortcuts made at the

point-of-sale and their trust in Defendant.

86. Plaintiff reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, her purchase of the Product.

### Fraud

87. Defendant misrepresented and/or omitted the attributes and qualities of the Product, that the company was from Indiana, the popcorn was grown in Indiana, and was processed into its final form in Indiana.

88. Defendant was aware, based on internal studies, of consumer preferences for foods which had a connection to a place known for those foods.

### Unjust Enrichment

89. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

### Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;
2. Injunctive relief to remove, correct and/or refrain from the challenged practices;
3. Awarding monetary, statutory and/or punitive damages and interest;
4. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and
5. Other and further relief as the Court deems just and proper.

Dated:   November 4, 2022

Respectfully submitted,

/s/Spencer Sheehan
Sheehan & Associates, P.C.
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com