## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| MELISSA GIBSON individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EAGLE FAMILY FOODS GROUP LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   Case No. 1:22-cv-02147-TWP-MKK<br>)<br>)<br>)<br>)<br>) |

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rules of

Civil Procedure 12(b)(1) and 12(b)(6) by Defendant Eagle Family Foods Group, LLC ("Eagle")

(Filing No. 11).  Plaintiff Melissa Gibson ("Gibson" or "Plaintiff") initiated this putative class

action, alleging that Eagle misled her and other consumers by marketing "Popcorn Indiana" brand

products as being made in Indiana by an Indiana company.  Gibson asserts claims for violation of

Indiana's and other states' consumer protection statutes, breach of express and implied warranties,

violation of the Magnuson-Moss Warranty Act, negligent misrepresentation, fraud, and unjust

enrichment. For the following reasons, the Court **grants** Eagle's Motion to Dismiss.

### I.      BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a

motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws all

inferences in favor of Gibson as the non-moving party.  *See Bielanski v. County of Kane*, 550 F.3d

632, 633 (7th Cir. 2008).

Eagle manufactures, labels, markets, and sells popcorn products under the brand "Popcorn

Indiana" (the "Product") (Filing No. 1 at ¶ 1).  Although the Product is made with corn grown in

Indiana, it is not made (popped) in Indiana, and Eagle is not an Indiana company. *Id.* at ¶¶ 24–25. Neither the front nor back of the Product packaging states that the Product is not made in Indiana or by an Indiana company, though Eagle's website states that the Product is manufactured in Illinois. *Id.* at ¶¶ 26–27. The front label of certain varieties of the Product appear as follows:

  

*Id.* at ¶ 18.

The Product is sold for approximately two dollars and ninety-nine cents for a three-ounce bag, excluding tax. *Id.* at ¶ 35. On one or more occasions between August and October 2022, Gibson purchased the Product at "locations," including a Walmart at 1133 North Emerson Avenue in Greenwood, Indiana. *Id.* at ¶ 46. Gibson bought the Product because she believed the "Popcorn Indiana" label referred to the place the corn was grown, the place it was popped, and the place the company was from. *Id.* at ¶¶ 47–48. If Gibson had known the Product was not made in Indiana or by an Indiana company, she would not have purchased the Product or would have paid less for it. Gibson filed this putative class action on behalf of herself and all persons in Indiana, North Dakota, North Carolina, Utah, Idaho, Alaska, West Virginia, and Montana, "who purchased the Product during the statutes of limitations for each cause of action alleged." *Id.* at ¶ 55.

## II.  LEGAL STANDARDS

### A.  Standard for Dismissal under Rule 12(b)(1)

2

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  The burden of proof is on the plaintiff, the party asserting jurisdiction. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc).  "The plaintiff has the burden of supporting the jurisdictional allegations of the complaint by competent proof."  *Int'l Harvester Co. v. Deere & Co.*, 623 F.2d 1207, 1210 (7th Cir. 1980).  "In deciding whether the plaintiff has carried this burden, the court must look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time."  *Id.*

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff."  *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted).  Further, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Id.* (citation and quotation marks omitted).

**B.**     **Standard for Dismissal under Rule 12(b)(6)**

Similarly, Rule 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff.  *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("[I]t is not enough to give a threadbare recitation of the elements of a claim without factual support."). The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

### III.  DISCUSSION

Gibson asserts six claims: Count I: violation of the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-0.1–12 ("IDCSA"); Count II: violation of other "State Consumer Fraud Acts"; Count III: breach of express and implied warranties and violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–12 ("MMWA"); Count IV: negligent misrepresentation; Count V: fraud; and Count VI: unjust enrichment. On behalf of herself and others, she seeks compensatory and injunctive relief.

Eagle argues the Complaint should be dismissed because Gibson lacks standing to seek injunctive relief and to assert claims under other states' statutes; she fails to adequately plead her fraud claims (Count I, II, and V); her warranty and MMWA claims fail for several reasons; her

4

unjust enrichment claim is barred by Indiana's economic loss doctrine; and her negligent misrepresentation claim is barred by the existence of an adequate remedy at law. Eagle also argues that all of Gibson's claims must be dismissed because the Product label is not misleading.

**A.      Lack of Standing**

Eagle argues that Gibson lacks standing to seek injunctive relief or to sue under other states' consumer protection statutes (Filing No. 12 at 14).  Because standing is a jurisdictional issue, the Court addresses this argument first.

**1.      Injunctive Relief**

Eagle contends Gibson may not seek injunctive relief because she faces no future risk of deception.  Specifically, Gibson now "knows the geographic origin of Popcorn Indiana products, [so she cannot plausibly claim that she faces any future risk of being misled on the geographic origin of the products" (Filing No. 12 at 14).  The Court agrees.

"It goes without saying that those who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).  "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. at 495–96 (1974).  "Without a 'showing of any real or immediate threat that the plaintiff will be wronged again,' [a plaintiff] lack[s] standing to request, and the district court lack[s] jurisdiction to award, . . . [a] permanent injunction." *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 396 (7th Cir. 2019) (citation omitted) (quoting *Lyons*, 461 U.S. at 111).

The Northern District of Illinois, which frequently adjudicates consumer fraud actions, has repeatedly held that a consumer who learns of an alleged deception is not likely to suffer any future similar harm, so the consumer cannot obtain injunctive relief. *See, e.g.*, *Calderon v. Procter &*

*Gamble Co.*, -- F. Supp. 3d --, No. 22-cv-3326, 2023 WL 3627797, at *6 (N.D. Ill. May 24, 2023); *Geske v. PNY Techs., Inc.*, 503 F. Supp. 3d 687, 701 (N.D. Ill. 2020); *Benson v. Fannie May Confections Brands, Inc.*, No. 17 C 3519, 2018 WL 1087639, at *5 (N.D. Ill. Feb. 28, 2018); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014) (stating in dicta that once a consumer becomes aware of deceptive "sales practices, he is not likely to be harmed by the practices in the future"). Stated succinctly: "[a] 'fool me once' plaintiff does not need an injunction if he or she is not going to buy the product again anyway. There is no risk of 'fool me twice,' so there is no basis for an injunction." *Geske*, 503 F. Supp. 3d at 702.

It is clear from the Complaint that Gibson now knows that the Product is manufactured and distributed from outside Indiana (Filing No. 1 at ¶¶ 25–27). As such, there is no risk that Gibson will purchase the Product in the future and be deceived by it. *Id.* at ¶ 53 (stating Gibson would buy the Product again only once "she can do so with the assurance its representations are consistent with its abilities, attributes, and/or composition"); *see Benson*, 2018 WL 1087639, at *5 ("Most courts to address similar circumstances have held that absent some concrete basis to conclude that the plaintiffs will or must purchase the product again in the future *and be deceived*, they cannot meet the standing requirements for injunctive relief claims." (emphasis added)).

Gibson argues that injunctive relief is nevertheless appropriate because she can no longer "rely on the labeling of other similar products which reference a geographical location" (Filing No. 14 at 21). Plaintiff's counsel has unsuccessfully made this same argument, almost verbatim,

in several other cases throughout the country.[1] That argument is unsuccessful here, too. Gibson's generalized skepticism about "similar products" that refer to a geographical location does not provide any basis for imposing injunctive relief against Eagle, specifically, and it wholly fails to satisfy Gibson's burden of showing a "real and immediate threat" that she will purchase and be deceived by the Product in the future. *See Le v. Kohls Dep't Stores, Inc.*, 160 F. Supp. 3d 1096, 1111 (E.D. Wis. 2016) ("[W]ithout further factual development, the Court is unclear just exactly what [plaintiff] would be expected to be 'aware' of in order to avoid future harm from Kohls.").

Gibson lacks standing to pursue injunctive relief, so her request for injunctive relief is **dismissed for lack of subject matter jurisdiction**.

### 2.     Violation of Other States' Consumer-Protection Statutes (Count II)

Eagle also argues Gibson lacks standing to pursue Count II, which alleges violations of the consumer fraud statutes of North Dakota, North Carolina, Utah, Idaho, Alaska, West Virginia, and Montana, on behalf of residents of those states who purchased the Product "and may assert their consumer protection claims" under those states' statutes (Filing No. 1 at ¶¶ 66–67).

Gibson responds that she "has established her own standing," and that determining "whether she can represent citizens outside of Indiana is 'logically antecedent' to issues typically resolved in class certification," citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 612 (1997) ("*Amchem*") (Filing No. 14 at 16). Gibson argument is unclear because "whether she can represent citizens outside of Indiana" *is* an issue "typically resolved in class certification." *Id.* Gibson may

---

[1] *See, e.g.*, *Ramirez v. Kraft Heinz Foods Co.*, -- F. Supp. 3d --, 2023 WL 4788012, at *6 (S.D. Fla. July 27, 2023) ("[T]here is no real and immediate threat of future injury. Plaintiff's counsel conceded that point during oral argument and acknowledge that Plaintiff lacks standing to seek injunctive relief."); *Valiente v. Publix Super Markets, Inc.*, No. 22-22930-Civ, 2023 WL 3620538, at *6 (S.D. Fla. May 24, 2023); *McCall v. Publix Super Markets, Inc.*, No. 22-cv-584, 2023 WL 2362542, at *6 (M.D. Fla. Feb. 28, 2023); *Cristia v. Trader Joe's Co.*, No. 22 CV 1788, 2022 WL 17551552, at *2 (N.D. Ill. Dec. 9, 2022); *Chung v. Igloo Prods. Corp.*, No. 20-CV-4926, 2022 WL 2657350, at *4–5 (E.D.N.Y. July 8, 2022); *Bondick v. Ricoh Imaging Ams. Corp.*, No. 21 C 6132, 2022 WL 2116664, at *7 (N.D. Ill. June 13, 2022); *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 283 (S.D.N.Y. 2021); *Gavilanes v. Gerber Prods. Co.*, No. 20-cv-05558, at *5 (E.D.N.Y. Nov. 1, 2021).

be arguing that standing issues should be decided before class certification, but that argument runs contrary to *Amchem*, which held that in certain cases, class certification issues should be decided first. She may also be arguing that standing questions should be deferred until after class certification, which would be supported by *Amchem*. *See also Ortiz v. Fireboard Corp.*, 527 U.S. 815, 831 (1999) (citing *Amchem*, 521 U.S. at 612 for same proposition).

"The Seventh Circuit has not explicitly settled the question of whether a district court should always delay Article III standing questions until determining whether to certify a class." *Catlin v. Hanser*, No. 10-cv-0451, 2011 WL 1002736, at *7 (S.D. Ind. Mar. 17, 2011). In *Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002), the Seventh Circuit held that the district court erred by not first addressing class certification issues related to standing where a Rule 23 motion for class certification was pending. *Id.* at 677–82. However, *Payton* does not clarify whether a district court must first consider class certification if no Rule 23 motion is pending, as is the case here. *Compare Catlin*, 2011 WL 1002736, at *7 (declining to defer consideration of standing and dismissing claims under consumer protection laws of states in which named plaintiff did not suffer any injury), *with Harris v. Anthem Cos., Inc.*, No. 22-cv-00002, 2022 WL 17488516, at *4–5 (S.D. Ind. Dec. 7, 2022) (deferring consideration of standing challenges until class certification stage).

Regardless, the Court need not address the standing question because Count II must be dismissed for other reasons—namely, Gibson's failure to adequately plead fraud under Rule 9(b) as to the IDCSA and other similar state statutes, as discussed below.

This Court has previously declined to address standing in similar cases where alternative grounds for dismissal are available. *Armstrong v. Deere & Co.*, No. 16-cv-844, 2017 WL 4168485, at *4 (S.D. Ind. Sept. 20, 2017) (dismissing claims under all other state consumer protection laws because plaintiff failed to adequately allege consumer fraud under Indiana or Illinois law). Several

other district courts have taken this same approach in other cases filed by Plaintiff's counsel. The Court cites only a sampling of those cases.[2]

For the same reason, this Court need not, and does not, address whether it has personal jurisdiction over the putative class members from other states ([Filing No. 12 at 16](#); [Filing No. 14 at 17](#); [Filing No. 15 at 16](#)). Eagle may re-raise its standing and personal jurisdiction arguments, if appropriate, if Gibson chooses to file an amended complaint.

## B. Failure to Plead Fraud with Particularity (Counts I, II, and V)

Eagle argues that Gibson's fraud-based claims should be dismissed because they fail to meet the heightened pleading requirement under Federal Rule of Civil Procedure 9(b). Gibson's claim under the IDCSA[3] (Count I), her claim under "similar" consumer protection statutes (Count II), and her claim for common law fraud (Count V) all require a showing of an intent to defraud or mislead. Ind. Code § 24-5-0.5-2(a)(8); *Lawyers Title Ins. Corp. v. Pokraka*, 595 N.E.2d 244, 249 (Ind. 1992) (reciting elements of fraud)). Federal Rule of Civil Procedure 9(b) states, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud

---

[2] *See, e.g.*, *Lumbra v. Suja Life, LLC*, -- F. Supp. 3d --, 2023 WL 3687425, at *9 (N.D.N.Y. May 26, 2023); *Hodorovych v. Dollar Gen. Corp.*, No. 22-cv-03415, 2023 WL 3602782, at *4 (N.D. Ill. May 23, 2023); *Lesorgen*, 2023 WL 3568686, at *4; *Warren v. Coca-Cola Co.*, --. F. Supp. 3d --, 2023 WL 3055196, at 8 n. 10 (S.D.N.Y. Apr. 21, 2023); *cf. Brownell*, 2023 WL 4489494, at *6 (dismissing multi-state claim for failure to satisfy Rule 8's pleading requirements); *English v. Danone N. Am. Public Benefit Corp.*, No. 22 CV 5105, 2023 WL 4187515, at *7 (S.D.N.Y. June 26, 2023) (dismissing multi-state claim for lack of standing).

[3] Two types of deceptive acts are actionable under the IDCSA: (1) uncured deceptive acts, which do not require a showing of an intent to defraud or mislead but do require pre-suit notice; and (2) incurable deceptive acts, which require a showing of an intent to fraud or mislead but do not require notice. *Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021) (citing Ind. Code § 24-5-0.5-2(7)–(8)); ([Filing No. 12 at 17](#) n.3). Gibson has not alleged that she provided pre-suit notice of uncured deceptive acts, so she may only assert a claim for incurable deceptive acts. *McCormick Piano & Organ Co., Inc. v. Geiger*, 412 N.E.2d 842, 850 (Ind. Ct. App. 1980), *abrogated on other grounds by Atl. Coast Airlines v. Cook*, 857 N.E.2d 989 (Ind. 2006) ("Once the consumer gives notice to the supplier . . . , then the supplier has thirty days in which to make adjustments or modifications. After this thirty-day internal has expired the consumer may bring suit for 'an uncured deceptive act' if he still feels aggrieved by the supplier's actions. *But if the consumer fails to comply with the notice provisions then his suit can only be for 'an incurable deceptive act.'*" (emphasis added)); *see Prosser v. Cap. One Bank (USA), N.A.*, No. 20-cv-01117, 2021 WL 6050015, at *11 (S.D. Ind. Dec. 21, 2021) (holding plaintiff failed to allege notice of uncured deceptive act and failed to adequately allege claim for incurable deceptive act); *Freeman v. Ocwen Loan Servicing, LLC*, No. 18-cv-03844, 2020 WL 7489033, at *17 (S.D. Ind. Dec. 21, 2020) (same).

or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  If a claim rests on deceptive conduct, the complaint must meet Rule 9(b)'s heightened pleading standard. The Seventh Circuit has interpreted this particular requirement to mean the complaint must identify the "who, what, when, where, and how" of the alleged fraud. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citing *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019)).

Gibson argues that the "'who' was Eagle Family Foods Group, LLC,'" the "'what' was the Product label, 'Popcorn Indiana,'" the "'where' and 'when' was at 'Walmart, 1133 N Emerson Ave Rd, Greenwood, IN 46143, between August and October 2022,'" and the "how' was 'the Product [was] neither from nor made in Indiana,' but 'is made in Waukegan, Illinois'" (Filing No. 14 at 20–21).  Plaintiff's counsel has made this same argument in other cases with mixed success. *Compare Cota v. Ralph Lauren Corp.*, 603 F. Supp. 3d 666, 674–75 (E.D. Wis. 2022) ("[Plaintiff] claims that the 'who' is the RLC, the 'what' includes the representations with respect to pima cotton on the clothing, the 'when' and 'where' was between September 2019 and September 2020 at the T.J. Maxx in Manitowoc, Wisconsin, and the 'how' involves the fibers of the product being below the range for pima cotton.  But this does not satisfy the particularity that Rule 9(b) demands."), *with Crawford v. AriZona Beverages USA LLC*, No. 22-cv-220, 2023 WL 1100260, at *8 (S.D. Ill. Jan. 30, 2023) (finding plaintiff adequately alleged "the who: Defendant; the what: 'Lite' labeling on the Product; the when and where: Plaintiff's purchases and reading of the Label made between January 2021 and January 2022 at two BP Stations in Caseyville, Illinois; and how: by representing that the Product was lower in sugar and calories than other beverages").

On reply, Eagle argues Gibson was required to plead additional details, like "which products she bought, when she bought them, the prices she paid for them, which label or labels she

viewed, what digital media or other marketing she reviewed, and where else—besides one Walmart—she purchased these products" (Filing No. 15 at 18). This Court has not previously required such a level of detail in consumer fraud actions. *Rubio v. Polaris, Inc.*, No. 21-cv-3006, 2022 WL 13909757, at *4 (S.D. Ind. Oct. 24, 2022) (finding plaintiff adequately stated a consumer fraud claim regarding a utility terrain vehicle by alleging defendant's online advertisements stated the vehicle was "safe" for rentals in The Badlands, that she saw the advertisements "'from her home in Illinois,' while making an 'on-line rental purchase for The Badlands,'" and that she relied on those advertisements). The Court is therefore disinclined to dismiss Gibson's fraud claims for failure to satisfy Rule 9(b)'s particularity requirement.

However, Gibson's fraud claims must be dismissed for another reason: her claims fail to adequately plead scienter. Gibson's consumer protection statute claims allege only that "Plaintiff relied on the representations and omissions" of Eagle and that "Plaintiff and class members were damaged by paying more for the Product than they would have if they knew the present facts" (Filing No. 1 at ¶¶ 64–65; *see id.* at ¶ 67 (alleging only that putative class members were harmed in the same way as Gibson)). Her common law fraud claim alleges only that Eagle "misrepresented and/or omitted the attributes and qualities of the Product" and that Eagle "was aware, based on internal studies, of consumer preferences for foods which had a connection to a place known for those foods." *Id.* at ¶¶ 87–88.

Gibson argues these allegations sufficiently plead scienter because Rule 9(b) allows intent and knowledge to be "alleged generally" (Filing No. 14 at 21). Without success, Plaintiff's counsel

has raised this argument several times, and this Court, too, rejects it.[4]  The Complaint is devoid of
any factual allegations, general or otherwise, regarding an intent to defraud or deceive.  Gibson
has failed to adequately plead fraud under Rule 9(b).  For that reason, Counts I, II, and V are
**dismissed**.

C.       **Insufficient Warranty  and Violation of the Magnuson-Moss Warranty Act (Count
III)**

In Count III, Gibson alleges breaches of an express warranty, implied warranty of fitness
for a particular purpose, and implied warranty of merchantability under Indiana law, as well as
violations of the MMWC.[5]  (Filing No. 1 at ¶¶ 68–80.)  Eagle argues that Gibson's claims for
breach of express and implied warranties should be dismissed because Gibson failed to provide
Eagle with pre-suit notice of the alleged breaches, she lacks vertical privity with Eagle, and
because she fails to allege the Product was not merchantable or fit for a particular purpose.
Concerning the MMWA claim, Eagle argues it must fail because Gibson has no viable underlying
state law warranty claim and because the MMWA does not apply in this case. The Court addresses
each argument in turn.

---

[4] *See, e.g.*, *Kinman v. Kroger Co.*, 604 F. Supp. 3d 720, 731 (N.D. Ill. May 27, 2022) (stating that although "intent
and knowledge 'may be alleged generally' . . . [t]hey may not . . . be alleged conclusorily"); *Clark*, 2023 WL 4351464,
at *8 ("[Plaintiff] responds that she satisfies the pleading requirements set forth in [Rule] 9(b) because she alleges the
fraud's 'who, what, where, when, and how.' The Court again agrees with Blue Diamond. [Plaintiff's] scienter
allegations parallel those found insufficient by courts within this district as well as courts outside this district. In other
words, the Court finds that [Plaintiff's] allegations are conclusory."); *see also, e.g.*, *Chiappetta v. Kellogg Sales Co.*,
No. 21-cv-3545, 2022 WL 602505, at *8 (N.D. Ill. Mar. 1, 2022) (holding that plaintiff's allegation that "defendant's
fraudulent intent 'is evinced by its knowledge that the Product was not consistent with its representations'" did not
adequately plead scienter under Rule 9(b)); *Rudy v. Family Dollar Stores, Inc.*, 583 F. Supp. 3d 1149, 1165 (N.D. Ill.
2022) (same); *Cummings v. Growers*, No. 22-cv-141, 2023 WL 3487005, at *6 (N.D. Fla. May 15, 2023) (same);
*Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 571–72, 585 (S.D.N.Y. Mar. 16, 2021) (same); *Chung*, 2022
WL 2657350, at *19 (same).
[5] The Magnuson-Moss Warranty Act is the federal law that governs consumer product warranties. Passed by Congress
in 1975, the MMWA requires warrantors of consumer products to provide consumers with detailed information about
warranty      coverage.      https://www.ftc.gov/business-guidance/resources/businesspersons-guide-federal-warranty-
law#Magnuson-Moss. Visited August 24, 2023.

1.  **No Pre-Suit Notice**

Eagle first argues that Gibson's warranty claims fail because Gibson failed to give pre-suit notice of the alleged breaches.  Indiana Code § 26-1-2-607(3)(a) requires that a "buyer must, within a reasonable time after [s]he discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy."  The Seventh Circuit has held that this statute "requires a buyer to give the seller notice *before bringing suit* for breach of warranty."  *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781 (7th Cir. 2011) (emphasis added); *see Cincinnati Ins. Cos. v. Hamilton Beach/Proctor-Silex, Inc.*, No. 05 CV 49, 2006 WL 299064, at *4 (N.D. Ind. Feb. 7, 2006) (applying Indiana law, dismissing warranty claim for failure to provide pre-suit notice); *Lemon v. Anonymous Physician*, No. 04CV2083, 2005 WL 2218359, at *2 (S.D. Ind. Sept. 12, 2005) (same); *see also Wortman v. C.R. Bard, Inc.*, No. 19-cv-03273, 2019 WL 6329651, at *2 (S.D. Ind. Nov. 26, 2019) (stating vertical privity and "pre-suit notice" are "both requirements of contract-based breach of warranty claims").

Gibson responds that "Ind. Code § 26-1-2-607(3)(a) makes no reference to the filing of any legal action," and that she timely notified Eagle of the alleged breaches "by filing this action on November 4, 2022" (Filing No. 14 at 17).  Gibson cites two cases, but neither supports her argument.  In *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, 155 F. Supp. 2d 1069 (S.D. Ind. 2001) ("*Bridgestone*"), this Court held only that neither Michigan nor Tennessee law suggests that "a lawsuit can never satisfy the notice of breach requirement" under § 2-607(3)(a) of the Uniform Commercial Code.  *Id.* at 1110–11.  The *Bridgestone* court did not interpret or apply Indiana law, and it did not hold that a lawsuit always satisfies the notice requirement for breach of warranty claims.  In *LDT Keller Farms, LLC v. Brigitte Holmes Livestock Co.*, 722 F. Supp. 2d 1015, 1025 (N.D. Ind. 2010), the court dismissed all of the

plaintiffs' breach of warranty claims for which they failed to provide pre-suit notice to the defendants. *Id.* at 1025–26.

The Court notes that Plaintiff's counsel has tried, and failed, numerous times to argue that a lawsuit constitutes adequate notice under Illinois law, often relying on *Bridgestone*.[6]  The Court expects that Plaintiff's counsel now understands the futility of his notice argument under Indiana law and will refrain from wasting judicial resources by raising it again in the future.

## 2.   <u>No Vertical Privity with Eagle</u>

Eagle next contends that Gibson's warranty claims fail because she does not allege vertical privity between her and Eagle (<u>Filing No. 15 at 20</u>).  Gibson responds that an exception to vertical privity under Illinois law applies (<u>Filing No. 14 at 18</u>).  Because Gibson's warranty claims must be dismissed for failure to provide pre-suit notice, the Court need not reach this argument.  However, should Gibson choose to file an amended complaint, the parties should be aware of the following principles of Indiana law regarding vertical privity.

First, although Indiana law requires vertical privity for express warranty claims, Indiana courts have recognized an exception to that requirement "'where [the manufacturer] allegedly made express warranties' directly to the remote purchaser." *Bayer Corp. v. Leach*, 153 N.E.3d 1168, 1191 (Ind. Ct. App. 2020) (denying motion for judgment on the pleadings that argued failure to allege vertical privity). *But see Ryden v. Tomberlin Auto. Grp.*, No. 11-cv-1215, 2012 WL 4470266, at *2 (S.D. Ind. Sept. 2012) (holding plaintiff's express warranty claim did not fall within exception because plaintiff did not allege he saw or relied on advertisements).

---

[6] *See, e.g.*, *Clark*, 2023 WL 4351464, at *7; *Rudy v. D.F. Stauffer Biscuit Co., Inc.*, -- F. Supp. 3d --, 2023 WL 2711612, at *7 (N.D. Ill. Mar. 30, 2023); *Cerretti v. Whole Foods Market Grp., Inc.*, No. 21 CV 5516, 2022 WL 1062793, at *5 n. 10 (N.D. Ill. Arp. 8, 2022); *Rudy*, 583 F. Supp. 3d at 1162.

Second, in *Hyundai Motor America, Inc. v. Goodin*, 822 N.E. 947 (Ind. 2005), the Indiana Supreme Court abolished the vertical privity requirement for claims for breach of the implied warranty of merchantability. *Id.* at 959; *see Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1026 (N.D. Ind. 2011) ("Vertical privity is not required for a claim of breach of the implied warranty of merchantability even if that claim sounds in contract.").

Third, vertical privity *is* required for Gibson's claim of breach of the implied warranty of fitness for a particular purpose, and no Indiana court has adopted Illinois' "direct dealing" exception to vertical privity. *See Pizel v. Monaco Coach Corp.*, 364 F. Supp. 2d 790, 794 (N.D. Ind. 2005) (holding that *Goodin* does not extend to claims for implied breach of fitness for a particular purpose); *Atkinson*, 813 F. Supp. 2d at 1026 ("Still, vertical privity is required for claims of breach of express warranty and breach of implied warranty of fitness for a particular purpose.").

### 3. <u>Products Were Merchantable and Fit for Particular Purpose</u>

Eagle next argues that it did not breach the implied warranty of merchantability or warranty of fitness for a particular purpose because the Product was fit for human consumption and fit for its particular purpose (Filing No. 12 at 21–22). The Court need not address these arguments, but the Court briefly notes that Gibson's perfunctory response does not adequately refute Eagle's arguments.

In her response brief, Gibson asserts, without any supporting authority, that the Product "could not 'pass without objection in the trade'" under Indiana Code § 26-1-2-314(2)(a) and that the products are not fit for a particular purpose because they "'indicat[ed] geographical origin …, thus, Plaintiff expected the company was from Indiana, the popcorn was grown in Indiana, and was processed into its final form in Indiana, and relied on Defendant's skill and judgment to select or furnish such a suitable product'" (Filing No. 14 at 18, 19). These arguments do no more than restate some of Gibson's allegations and cite sections of the Indiana code.

Gibson's undeveloped arguments, which lack any independent analysis or supporting authority, cannot defeat dismissal.  *See M.G. Skinner & Assocs. Ins. Agency, Inc. v. Norman-Spencer Agency, Inc.*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Boomer v. AT&T Corp.*, 309 F.3d 404, 422 n.10 (7th Cir. 2002) (stating that where party fails to support position with any legal analysis or citation, the argument is waived); *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.").  If Gibson chooses to file an amended complaint, and if Eagle files another dispositive motion, Plaintiff's counsel is expected to either develop a response to Eagle's arguments or concede them.

### 4.    No Viable State Law Claim

Eagle contends Gibson's MMWA claim must be dismissed because Gibson has failed to assert a viable state law warranty claim (Filing No. 12 at 22). Gibson responds only by stating that her "warranty claims support the Magnuson Moss Warranty Act . . . claim" (Filing No. 14 at 19). Gibson does not dispute that if her state law warranty claim fails, then so does her MMWA claim.

Eagle's argument is therefore unopposed and well-supported by controlling authority. Although the MMWA is a federal statute, it is rooted in state law causes of action. "[T]he MMWA 'allows consumers to enforce [limited] written and implied warranties in federal court, [as provided in section 2310(d)(1),] borrowing state law causes of action." *Anderson*, 662 F.3d at 781 (alterations in original) (quoting *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004)). "[F]or all practical purposes, the MMWA operators as a gloss on . . . state law breach of warranty claims." *Id.* As such, "[t]he MMWA depends on the existence of an underlying viable state-law warranty claim, and so the two claims can be evaluated together and succeed or fail

16

together." *Zylstra v. DRV, LLC*, 8 F.4th 597, 609 (7th Cir. 2021). Gibson's state law breach of warranty claim cannot succeed for failure to provide pre-suit notice, so her MMWA claim must be **dismissed**.

### 5.   The MMWA Does Not Apply

Section 2302 of the MMWA sets forth the rules governing contents of warranties. Certain provisions of the Act apply only to written warranties which pertain to consumer products actually costing the consumer more than five dollars. *See* 15 U.S.C. § 2302(a) and (e). And, no claim shall be cognizable in a suit if the action is brought as a class action, and the number of named plaintiffs is less that one hundred. *See* 15 U.S.C. § 2310(d)(3)(C). Eagle argues that the MMWA does not apply in this case because the alleged misrepresentations do not constitute a "written warranty" under the MMWA; because the Product does not cost more than five dollars; and because there are not at least one hundred named plaintiffs in the putative class action (Filing No. 12 at 22–23). Since Gibson's MMWA claim must be dismissed for failure to allege an underlying state law claim, the Court will only briefly address these remaining arguments.

As to Eagle's "written warranty" argument, Gibson responds that the words "Popcorn Indiana" are a "'written affirmation of fact' promising it would be defect free and 'Plaintiff understood this meant the company was from Indiana, the popcorn was grown in Indiana, and was processed into its final form in Indiana'" (Filing No. 14 at 19). Eagle correctly notes that Gibson has offered no authority to support her argument, effectively waiving it. Eagle also cites persuasive authority that brand names alone are not written warranties. *See, e.g.*, *Clark v. Blue Diamond Growers*, No. 22-cv-21591, 2023 WL 4351464, at *5 (N.D. Ill. July 5, 2023).

As to the five-dollar minimum cost requirement and one hundred named-plaintiff requirement, Gibson asserts that "15 U.S.C. § 2302(e) and 15 U.S.C. § 2310(d)(3)(C) are jurisdictional requirements pursuant to the Class Action Fairness Act of 2005 ('CAFA'), not the

MMWA" (Filing No. 14 at 19).  Gibson is simply wrong.  Both of these statutes are found in the

MMWA, at 15 U.S.C. §§ 2301–2312.  The CAFA, found at 28 U.S.C. §§ 1332(d), is a separate

statute with its own amount-in-controversy requirement (five million dollars in the aggregate) and

its own numerosity requirement (at least one hundred class members).  The Seventh Circuit has

not yet decided whether CAFA's numerosity requirement overrides the MMWA's named-plaintiff

requirement.  *See Velez v. RM Acquisition, LLC*, -- F. Supp. 3d --, 2023 WL 3043239, at *4 (N.D.

Ill. Apr. 21, 2023).  But there is no authority stating that the CAFA's aggregate amount in

controversy requirement overrides the MMWA's minimum cost requirement.  The Court will not

opine on the conflict between CAFA's and MMWA's numerosity requirements, but the Court does

conclude that Gibson cannot assert a viable MMWA claim because the product at issue allegedly

costs only two dollars and ninety-nine cents (Filing No. 1 at ¶ 35).  For this reason, in addition to

Gibson's failure to assert a viable state law warranty claim, her MMWA claim must be **dismissed**.

**D.**    **Economic Loss Doctrine Bars Negligent Misrepresentation Claim (Count IV)**

Eagle argues that Gibson's negligent misrepresentation claim (Count IV) is barred by

Indiana's economic loss-doctrine (Filing No. 12 at 18).  "Under Indiana's economic loss doctrine,

and subject to certain exceptions . . . 'there is no liability in tort for pure economic loss caused

unintentionally.'"  *JMB Mfg., Inc. v. Child Craft, LLC*, 799 F.3d 780, 785 (7th Cir. 2015) (quoting

*Indianapolis-Marion Cnty. Public Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 736

(Ind. 2010)).  Gibson alleges that she was harmed because she either would not have paid, or would

not have paid as much, for the Product had she known about its geographic origins.  Gibson does

not dispute that she suffered an economic loss.

Instead, Gibson argues the economic loss doctrine does not apply because Eagle, as "a

trusted brand known for its popcorn" with "special knowledge and experience," had a non-

delegable duty "to provide non-deceptive information" (Filing No. 14 at 20).  "It is true that Indiana

recognizes an exception to the economic loss rule for certain special relationships," like those for lawyers, fiduciaries, and liability insurers. *JMB Mfg, Inc.*, 799 F.3d at 788. But Gibson cites no authority showing that under Indiana law, the manufacturer of a product and a purchaser have the type of special relationship that would warrant an exception to the economic loss doctrine. The only authority Gibson cites to support this position is one 1994 decision from the Illinois Supreme Court, *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 515 (Ill. 1994) ("*Congregation of the Passion*"). *Congregation of the Passion* is distinguishable from this case because it applies Illinois law and because it involves professional accountant malpractice, not an ordinary sales transaction between a manufacturer and a purchaser. *Id.* Several Illinois federal courts have also declined to apply *Congregation of the Passion* in other consumer fraud cases filed by Plaintiff's counsel and dismissed similar negligent misrepresentation claims.[7]

Here, Eagle had no contract with Gibson and provided no professional specialized services to her. Eagle merely provided a product, and Gibson was harmed because the product was not as advertised. "The theory underlying the economic loss doctrine is that the failure of a product or service to live up to expectations is best relegated to contract law and to warranty either express or implied." *Gunkel v. Renovations, Inc.*, 822 N.E.2d 150, 153–54 (Ind. 2005); *see Hoopes v. Gulf Stream Coach, Inc.*, No. 10-CV-365, 2014 WL 4829623, at *10 (N.D. Ind. Sept. 29, 2014) (dismissing claims for negligent design, testing, inspection, manufacture, and repair of RV under

---

[7] *See, e.g.*, *Clark*, 2023 WL 4351464, at *8; *Rudy*, 2023 WL 2711612, at *9; *Connor v. Abbott Lab'ys, Inc.*, No. 21-cv-1463, 2023 WL 2690853, at *4 (S.D. Ill. Mar. 29, 2023); *Biczo v. Ferrara Candy Co.*, No. 22-cv-01967, 2023 2572384, at *3 (N.D. Ill. Mar. 20, 2023); *Smith v. Gen. Mills Sales, Inc.*, No. 22 CV 1529, 2023 WL 2349908, at *7 (N.D. Ill. Mar. 3, 2023); *Sneed v. Ferrero U.S.A., Inc.*, -- F. Supp. 3d --, No. 22 CV 1183, 2023 WL 2019049, at *5 (N.D. Ill. Feb. 15, 2023); *Cox v. Star Brands N. Am., Inc.*, No. 22-CV-141, 2022 WL 16786019, at *6 (S.D. Ill. Nov. 8, 2022); *Karlinski v. Costco Wholesale Corp.*, 616 F. Supp. 3d 753, 766–767 (N.D. Ill. July 21, 2022); *Sanders v. Hillshire Brands Co.*, No. 21-cv-1155, 2022 WL 2643974, at *4 (S.D. Ill. July 8, 2022); *Hauger v. Dollar Gen. Corp.*, No. 21-cv-01570, 2022 WL 2532487, at *5 (C.D. Ill. July 7, 2022); *Reinitz v. Kellogg Sales Co.*, No. 21-cv-1239, 2022 WL 1813891, at *6 (C.D. Ill. June 2, 2022); *Kinman*, 604 F. Supp. 3d at 727–28; *Cerretti*, 2022 WL 1062793, at *6; *Chiappetta*, 2022 WL 602505, at *7–8; *Rudy*, 583 F. Supp. 3d at 1164–65.

economic loss doctrine because "[t]he only loss claimed [was] related to the RV itself, so contract law, not tort law, applies."). Gibson's negligent misrepresentation claim is barred by the economic loss doctrine and must be **dismissed**.

### E.        Adequate Remedy at Law Bars Unjust Enrichment Claim (Count VI)

As to Count VI, Eagle contends that Gibson cannot plead unjust enrichment because she has alleged an adequate remedy at law.  *See Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1065 (S.D. Ind. 2011) ("Indiana law only permits recovery under the equitable principle of unjust enrichment when no adequate remedy at law exists." (citing *King v. Terry*, 805 N.E.2d 397, 400 (Ind. Ct. App. 2004)).  In her response, Gibson asserts that her "unjust enrichment claim is not a separate cause of action from her 'warranty and tort claims,'" but that she may "plead [her] claims in the alternative" (Filing No. 14 at 21).

While a party may plead breach of warranty claims and equitable claims in the alternative, "the inconsistent-pleading option in this context is limited."  *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013).  "A plaintiff may plead as follows: (1) there is an express contract, and the defendant is liable for breach of it; and (2) if there is *not* an express contract, then the defendant is liable for unjustly enriching himself at my expense."  *Id.*  That is not what Gibson is alleging. Gibson alleges throughout her Complaint that the alleged warranties existed, and she acknowledges in her response brief that her unjust enrichment claim "is not a separate cause of action from her 'warranty and tort claims.'"  (Filing No. 14 at 21.)  Gibson "claims that [Eagle] is liable for breaching this express [warranty] but that if it did not breach the [warranty], then it owes damages for unjust[ly] enriching itself. This manner of pleading unjust enrichment is impermissible."  *Cohen*, 735 F.3d at 616 (stating a plaintiff "may not include allegations of an express contract which governs the relationship of the parties, in the counts for unjust

enrichment").  Gibson does not properly plead her unjust enrichment claim in the alternative, so Count VI is **dismissed**.

**F.**    **Product Labels Were Not Misleading (Counts I–VI)**

Eagle further argues that all of Gibson's claims should be dismissed because the Product's label is not misleading as a matter of law ([Filing No. 12 at 10](#)). The parties thoroughly developed their arguments on this point, but because all of Gibson's claims must be dismissed for the reasons discussed above, the Court declines to address this argument at this time.  Eagle may re-raise this argument, if appropriate, if Gibson chooses to file an amended complaint.

**G.**    **Leave to Amend**

In its opening brief, Eagle asks that the Court dismiss Gibson's entire Complaint with prejudice ([Filing No. 12 at 24](#)).  At the end of her response, Gibson requests that the Court "deny Defendant's Motion or in the alternative grant leave to file an Amended Complaint" ([Filing No. 14 at 21](#)).  On reply, Eagle argues that Gibson should not be given leave to amend because she has not offered a meaningful indication as to how she would plead differently, though Eagle does not argue whether amendment would be futile ([Filing No. 15 at 24](#) (citing *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, No. 20-cv-02512, 2021 WL 3187521, at *7 (S.D. Ind. July 27, 2021), *aff'd*, 44 F.4th 1014 (7th Cir. 2022)).

The Seventh Circuit has instructed that "'[u]nless it is *certain* from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss.'"  *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (emphasis in original) (quoting *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 & n.3 (7th Cir. 2004)).  As such, Gibson will be afforded an opportunity to amend her Complaint.

## IV.     CONCLUSION

For the reasons set forth above, Defendant Eagle Family Foods Group LLC's Motion to Dismiss (Filing No. 11) is **GRANTED**.  Plaintiff Melissa Gibson's Complaint is **DISMISSED without prejudice**.  Gibson is granted leave to file an amended complaint within **fourteen (14) days of the date of this Entry** if an amended complaint is not an exercise in futility.  If nothing is filed, the Motion to Dismiss will be converted to a dismissal with prejudice and final judgment will issue.

**SO ORDERED**.

Date:   8/29/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Spencer Sheehan
SHEEHAN & ASSOCIATES, P.C.
spencer@spencersheehan.com

Amy P. Lally
SIDLEY AUSTIN LLP
alally@sidley.com

Elizabeth M. Chiarello
SIDLEY AUSTIN LLP
echiarello@sidley.com

Thomas Aaron Weber
SIDLEY AUSTIN LLP
tweber@sidley.com